## Bibb, Judge, &c. v. Reid & Hoyt.

1. Reid and Hoyt and one Hanrick agreed to become the sureties of W, in a bond about to be executed by him as executor: afterwards, Reid and Hoyt signed and sealed a bond, and delivered it to W, to become their deed in the event that Hanrick executed it also as surety. Hanrick never executed it, but the bond was delivered by W to the Judge of the County Court, as the deed of Reid and Hoyt. In a suit against them on the bond, to which they pleaded that the deed was delivered as an *escrow* merely—*Held* : First. That a bond may be delivered conditionally to a co-obligor, and will not be opera-  tive as the deed of the party, until the condition is performed. Second. That W was a competent witness to prove such conditional delivery having been released by Reid and Hoyt. Third. That the previous agreement, that Hanrick should be a surety, could not be given in evidence, because it did not refer to the bond which was actually executed, and therefore, not a part of the *res gestæ.*

2. All the defendants to a cause constitute but one party, and in a civil cause, are entitled to but four peremptory challenges. It would therefore be irregular to permit a further peremptory challenge; but, if the cause was tried by an impartial jury, such irregularity would not be available on error.

### Error to Montgomery Circuit Court.

THIS was a suit on an administration bond, commenced by the plaintiff in error, against George Whitman, as principal, and the defendants in error as his securities in the penal sum of forty thousand dollars. The writ was returned, not found, as to Whitman, and executed on the defendants in error. To a declaration in the usual form, the defendants severally pleaded. The defendant, Hoyt, after craving oyer of the bond, "says *actio non,*" &c. because he says, that at the time he signed said supposed bond, it was blank as to all the names thereto signed, except as to the name of George Whitman, and that before he signed his name thereto, said Whitman informed the defendant, that John W. T. Reid, who has signed said bond, and one Edward Hanrick, were to be joint sureties, with this defendant, and were, as such, to sign the same; and upon this information, and upon the condition that said Reid and said Hanrick, were to execute said bond, this defendant signed the same, but did not deliver the said bond to the plaintiff, but delivered the same to George Whitman, not as his deed, but to become his deed

only on the condition that the same should be executed by said Reid and said Hanrick, as co-sureties, and on this condition said Whitman was to deliver the same to said Bibb as his deed, and said defendant avers that said Hanrick never did sign and execute said bond, but that said Whitman, without the knowledge or consent of said defendant, procured one William T. Brame to execute the same as a co-surety, contrary to the agreement, and the condition upon which the said supposed writing obligatory was to become the deed of this defendant; but said George Whitman, without said Hanrick ever having signed and executed said bond, delivered the same to said plaintiff as this defendant's deed; wherefore he says that the said supposed writing obligatory is not his deed, and of this he puts himself upon the country, &c.

The plea of the defendant, Reid, is in substance, the same as the preceding, except that it avers, "that said bond was not deliverd to said plaintiff, but was delivered to George Whitman, not as his deed, but as an *escrow*, and to become his act and deed only, on condition, that Edward Hanrick should execute the same as co-surety." Both pleas were verified by affidavit.

The plaintiff demurred to the pleas, which being overruled, issue was taken thereon. Other pleas were also filed, but as they present no question for the consideration of this Court, need not be noticed. The defendants obtained a verdict, and judgment was rendered thereon by the Court.

Pending the trial, a bill of exceptions was sealed at the instance of the plaintiff, from which it appears that the plaintiff made no challenges, but rested satisfied with the jury as impannelled, that the defendant Reid, having made four peremptory challenges, the defendant, Hoyt, also, proposed to challenge other jurors peremptorily, which the Court permitted, though objected to by the plaintiff's counsel, and the defendant, Hoyt, accordingly made two peremptory challenges of jurors; to which the plaintiff excepted.

The deposition of George Whitman, the principal in the bond, he having been released by the defendants, was permitted to be read as evidence to the jury, though objected to by the counsel for the plaintiff; to which he excepted.

The defendants then introduced Edward Hanrick, who swore that he was not present at the signing or executing of the bond

6

by any of the parties, but was, notwithstanding, permitted to testify to several conversations he had with Whitman before the execution of the bond; no one else being present; and, also, conversations had separately with the defendants, Hoyt and Reid, before the execution of the deed, which declarations of said Whitman and defendants, tended to show that said bond was delivered as an *escrow*. To the introduction of this testimony, the plaintiff objected, but the objection was overruled by the Court.

The plaintiff prosecutes this writ, and now assigns for error,

1. Overruling the demurrer to the pleas.

2. Permitting more than four challenges to the defendants.

3. Permitting the testimony of Whitman to be read in evidence.

4. In permitting the evidence of Hanrick to go to the jury.

PECK and FAIR, for plaintiff in error, contended that a bond cannot be delivered as an *escrow* to a joint obligor, or to the obligee, but must be delivered to a stranger. 3 Halstead's Rep. 17; 2 Miller's Reports, 42; Sheppard's Touchstone, 57; 1 Paige, 385; 5 Cranch, 381; 8 Mass. 230.

CAMPBELL, contra; Croke Eliz. 835; Dyer, 34, b., 3 Wendell, 380; 7 Ohio Rep. 54; 6 Conn. N. S. 213; 10 Johns. 198; 17 ib. 196; 9 East. 360; 7 Pickering, 91; 1 Johns. Cases, 114; 9 Serg. & Lowb. 33; 4 Cranch, 219; 11 Peters, 86; 2 Harrington, 396; 11 Vermont, 448; 4 Barnewell and Ald. 440; 4 Stewart & Por. 159; 1 Stewart, 546.

ORMOND, J.—The principal question in this case arises on the demurrer to the pleas of the defendants. The defendants were sureties of one Whitman as administrator, and delivered the bond to him on the condition, that if another person signed it as co-surety, it was then to become their deed. It is urged that the conditional delivery could not be to the principal obligor, but to operate as a conditional delivery, must have been made to a stranger.

Delivery is essential to the validity of a deed, and is a question of fact evidenced by acts and declarations at the time, or inferred from the silence of the party; as where the obligor without any formal act or declaration permits the obligee

to take possession of the bond. The delivery must be by the obligor himself or by some one authorised to act for him. In this case, the efficacy of the delivery of the bond unconditionally, to the Judge of the County Court, by Whitman, must depend on his authority to do the act, and it would seem impossible to hold that an authority to another to deliver a bond, only upon the performance of a condition, was an authority to deliver absolutely. Such a proposition cannot be maintained unless established by some stern rule of necessity to prevent a greater evil. The ancient doctrine appears to have been as contended for by the counsel for the plaintiff in error. Thus it is said in Sheppard's Touchstone, 59: "So it must delivered to a stranger; for if I seal my deed and deliver it to the party himself, as an *escrow* upon certain conditions, &c.; in this case let the form of words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently, and (in reference to the legal operation of the deed) he is not bound to perform the condition." Thoroughgood's case, 5 Coke, 137. The reason of the rule appears to have been, that the act of delivery could not be qualified or controlled by a declaration made at the time, supposed to be inconsistent with it. This is undoubtedly true, as to all acts unequivocal in their nature. If one should discharge a loaded gun at another, he could not qualify the act by declaring at the time, that he meant no harm. But when an act is equivocal in its nature, and may mean one of two things, then it is certainly allowable to explain by a declaration at the time, the intent of the act. The rule as above stated in the Touchstone, has been recognised in the United States, in the cases cited from 5 Cranch, 351; 8 Mass. 230; 2 Sumner, 487; but it does not appear to obtain at this day in England, as appears by the case of Johnson and others v. Baker, 4 Barn. and Ald. 440, where a composition deed was delivered by a surety who had signed the deed to a creditor, not to be operative unless all the other creditors executed it. It was held that the deed was delivered as an *escrow*, and that all the creditors not having executed it, the surety was not bound. To the same effect, are the cases cited from 3 Wendell, 380; 11 Vermont, 448; 4 Cranch, 219; 2 Harrington, 396; 11 Peters, 86.

In the case cited from 4th Cranch, the bond was delivered

by a surety to the principal obligor to be delivered to the obligee, on condition other persons executed it as surety; such was also the fact in some of the other cases cited in argument, and a distinction may exist between a conditional delivery to a co-obligor, and such delivery to the obligee. Without, however, taking such a distinction, we are satisfied, that on principle, there can be no difference between a conditional delivery to a stranger, or to a co-obligor; that in either case the deed cannot be operative until the condition is performed, and such is clearly the weight of authority at the present day.

It was also urged, that on the ground of public policy, however the law might be in other cases, that in cases like the present, where infants and creditors were concerned, and the due execution of the bond entrusted to a public officer, that no conditional delivery could be made. We can see no reason for such a distinction. The Judge of the County Court is, by law, appointed to take the bond, and it is his duty not only to be satisfied that the sureties are able to respond in damages if called on, but also to know that it has been executed by them. If, as supposed by the counsel for plaintiff in error, the approval of the bond by the Judge of the County Court, is a judicial act, binding on the parties, the obligees would be concluded by it, although their names were forged, and a delivery by some one personating them. Such a conclusion cannot be tolerated, and we are very clear, that in approving an administrator's bond, the Judge of the County Court acts ministerially and not judicially. Indeed, the power to approve the bond is not given to the Court, but to the Judge. Aik. Dig. 177, sec. 3 ; and such has heretofore been the decisions of this Court, in analagous cases. 1 Stewart, 546; 4 Stew. & Por. 159.

The law authorising either party to make four peremptory challenges in all jury trials, does not authorise each defendant, where they sever in the pleading, to make four peremptory challenges. All the defendants to a suit, constitute but one party. But although the additional challenges should not have been allowed as tending to delay; and even in cases which might be supposed to defeat the ends of justice ; yet, we cannot see how the plaintiff was prejudiced thereby, as we learn from the record that the cause was tried by an impartial jury; at all events, though this proceeding was quite irregular, on the

authority of the case of Tatum v. Young, 1 Porter, 298, it cannot be questioned in this Court on that ground alone.

The objection to the deposition of Whitman, the principal obligor is put in this Court on the ground of public policy, that the witness shall not be heard to allege his own turpitude. The rule here relied on, was first promulgated in the case of Walton v. Shelly, 1 Term Rep. 296, in relation to negotiable paper, and subsequently overruled by the case of Jordain v. Lashbrooke, 7 Term Rep. 601 ; but the rule was never held to apply to bonds. In this State, it never has obtained, even as to negotiable paper. The exploded rule seems to be the doctrine of the United States Courts, 6 Peters, 51 ; but in the case of the United States v. Leffler, 11 Peters, 86, it was held not to apply to bonds. The interest of the witness having been released by the defendants, the objection went to his credit, and he was a competent witness.

The remaining question is, the refusal of the Court to exclude from the jury the testimony of Hanrick.

The testimony which the Court refused to exclude, was certain conversations which the witness had separately with Whitman, the principal, and the defendants who signed the bond as sureties, at some period anterior to the signing of the bond, as to who were to join in the bond.

To understand the relevancy of this testimony, it is necessary to consider what was the issue between the parties. The proposition which the defendants undertook to establish was, that the bond was delivered by them to Whitman, to be their act and deed, only on condition that it was executed also by Hanrick, as co-surety. In what manner did the evidence of Hanrick tend to prove this? It does not follow as a consequence, that because there was an agreement between the parties at some previous time, that these three persons should be co-sureties, that such agreement existed afterwards, and when the instrument was in fact signed and sealed. If the testimony of Hanrick had related to the *time* when the bond was signed and sealed by the defendants, it would doubtless have been a circumstance from which the jury might have inferred that the delivery by two was only on condition that all should execute the bond, but as it does not relate to the time of the execution of the bond, it is not part of the *res gestæ*, and must be exclu-

ded as mere hearsay evidence. A party's own declarations, where they relate to the act itself, may, under some circumstances, be evidence for him as constituting a part of the *res gestæ*, and of this, the case cited from 6 Conn. Rep. N. S. 293, furnishes an example. The rule is laid down with great clearness and force by C. J. Hosmer, in Enos v. Tuttle, 3 Conn. Rep. 250, where he says, " to be a part of the *res gestae*, the declarations must have been made at the time of the act done which they are supposed to characterise, and well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as to constitute one transaction." Tried by this rule, the testimony ought not to have been received, nor do we know of any rule of evidence which would authorise its admission.

It is supposed by the counsel for the defendants, that it should have been received to corroborate the testimony of Whitman: but this is merely another aspect of the same question. The object of the testimony of Whitman, was to establish the conditional delivery of the bond; and if the testimony of Hanrick did not, as we have seen, tend to establish that fact, how could it corroborate testimony which did? Or, in other words, how could testimony which was relevant, be sustained by that which was irrelevant? The probable result of its admission, was to mislead the jury ; and it should therefore have been rejected. For this error, the judgment is reversed, and the cause remanded,